IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FEDERATED MUTUAL INSURANCE COMPANY,** | )<br>)<br>) |
| **Plaintiff,** | )<br>)  Case No. 17-CV-0991-SMY |
| vs. | )<br>) |
| **COYLE MECANICAL SUPPLY INC. and PRAIRIE STATE GENERATING COMPANY, LLC,** | )<br>) |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge**

Pending before the court is Plaintiff Federated Mutual Insurance Company's ("Federated") Motion for Judgment on the Pleadings. (Doc. 24). For the following reasons, the Motion is **GRANTED.**

### Background

This action derives from a lawsuit pending in the Circuit Court for Washington County, Illinois, filed by Prairie State Generating Company, LLC ("Prairie") against Coyle Supply Company ("Coyle"). According to the Complaint filed in that case (Doc. 1-1): Prairie operates an electric generation facility in Washington County, Illinois. Coyle is a distributor, manufacturer's representative, and seller of commercial valves and specialty products. In July 2014, Prairie requested bids from Coyle for two- and four-inch valves. Coyle presented its bid in August 2014 and recommended valves manufactured by Copeland Industries ("Copeland").

In September 2014, Prairie purchased sixty-four Copeland valves from Coyle to be installed on its Unit #1 and Unit #2. Thirty-two valves were installed onto Unit #2 in March 2015.

On April 2, 2015, some of the valves began to fail, by among other things, leaking. Prairie notified Coyle and Copeland of the failing valves and requested warranty support. Soon after, more valves began to fail. Due to those failures, the remaining thirty-two valves were not installed onto Unit #1.

Prairie sued Coyle for breach of contract, breach of implied warranty of merchantability, and breach of warranty of fitness for a particular purpose ("Prairie Complaint"). Coyle forwarded the Prairie Complaint to its insurer, Federated, for defense and indemnification. On June 26, 2017, Federated denied any obligation to defend or indemnify Coyle on the Prairie Complaint. Federated subsequently filed the instant action seeking a declaratory judgment that it owes no duty to defend or indemnify Coyle because the Prairie lawsuit is outside the scope of coverage provided by the insuring agreement.

## Discussion

Rule 12(c) permits a party to move for judgment after the parties have filed the Complaint and Answer. *See F.R.C.P.* 12(c). Duty-to-defend questions in insurance-coverage disputes can sometimes be resolved at the pleadings stage. *See Nautilus Insurance. Co. v. 1452–4 N. Milwaukee Ave., LLC,* 562 F.3d 818, 822–24 (7th Cir.2009).

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a 12(b)(6) motion to dismiss for failure to state a claim. *Adams v. City of Indianapolis,* 742 F.3d 720, 727–28 (7th Cir.2014). That is, facts are viewed in the light most favorable to the nonmoving party, and the motion will be granted "only if it appears beyond doubt that the [nonmovant] cannot prove any facts that would support his claim for relief." *Buchanan–Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir.2009). Additionally, the moving party

must demonstrate that there are no material issues of fact to be resolved. *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir.2007).

To determine whether an insurer's duty to defend an underlying lawsuit has been triggered, the Court compares the allegations in the underlying Complaint with the language of the insurance policy. *Lagestee–Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir.2012). The insurer is not excused from its obligation to defend a suit against its insured unless it is clear from the underlying Complaint "that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1136 (1999). If the Complaint contains allegations "that are even potentially within policy coverage, the insurer is obligated to defend the insured." *American Fam. Mut. Ins. Co. v. W.H. McNaughton*, 363 Ill.App.3d 505, 300 Ill.Dec. 234, 843 N.E.2d 492, 510 (2006). Any doubts as to whether particular claims fall within the policy are resolved in favor of coverage. *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 643 (7th Cir.2007).

For its Motion, Federated argues: (1) there is no property damage alleged in the Prairie Complaint as defined by the Federated insurance policies and as interpreted by Illinois law; (2) there is no occurrence alleged in the Prairie Complaint as defined by the Federated insurance policies and interpreted by Illinois law; and (3) there is no personal advertising injury alleged in the Prairie Complaint as defined by the Federated insurance policies and interpreted by Illinois law. Coyle contends that when the Prairie Complaint is read in its favor, the allegations potentially fall within the policy's coverage.

The policy in dispute (Doc. 1-2) provides in relevant part:

## BUSINESSOWNERS LIABILITY COVERAGE FORM

### A. COVERAGES

**1. Business Liability**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D** - Liability Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the Coverage Extensions.

**b.** This insurance applies:

(1) To "bodily injury" and "property damage" only if:
  (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
  (b) The "bodily injury" or "property damage" occurs during the policy period;

### *Property Damage*

The policy defines property damage as:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

**b.** Loss of use of tangible property that is not physically injured. All

>such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Federated asserts there is no property damage claim because the Prairie Complaint seeks only damages for the repair and replacement of defective products. Coyle points to a sentence in the Prairie Complaint which states, "[a]fter Prairie installed the thirty-two valves, it placed Unit #2 back into service" (See, Doc. 1-1). It then argues, unpersuasively, that the obvious implication is that Prairie's power plant was not operating at its full capacity which constitutes a loss of tangible property under the policy.

The Prairie Complaint clearly alleges that the valves were faulty/defective. Moreover, during a hearing before Magistrate Judge Stephen C. Williams, Prairie's Counsel clarified that Prairie was not making a claim for loss of use but rather for the costs of replacing the allegedly defective valves and the associated piping linking the valves. (See, Doc. 33). An allegation of defective or faulty workmanship in the insured's products does not implicate 'property damage' under a standard commercial general liability policy." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.,* 622 F.3d 806, 811 (7th Cir.2010). These types of policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Id.* (citing *West Bend Mutual Ins. Co. v. People of Illinois,* 929 N.E.2d 606, 614–15 (2010)). Even reading the Prairie Complaint in the light most favorable to Coyle, this Court does not find an alleged property damage claim as defined in the Federated Policy.

### *Occurrence*

"Occurrence" is defined in the policy as "an accident including continuous or repeated

exposure to the same general harmful conditions (Doc 1-2). "Accident" is not defined in the policy. However, under Illinois law, "an accident" is defined as "an unforeseen occurrence, usually of an untoward or disastrous character, or an undersigned, sudden or unexpected event of an inflictive or unfortunate character." *Massachusetts Bay Ins. Co. v. Vic Koening Leasing Co.,* 136 F.3d 1116, 1124 (7th Cir.1998). Federated contends that there was no occurrence and thus, coverage is precluded. For its part, Coyle argues there was an occurrence because it could not foresee that the valves would be defective. (Doc. 31). "The mere failure of a product to perform as warranted is not beyond the realm of expectation and is foreseeable by the parties." *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.,* 611 N.E.2d at 1092 (1993). As such, the alleged failure of the valves does not constitute an occurrence under the Policy.

### *Personal and Advertising Injury*

The Policy defines "Personal and Advertising Injury" as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement" or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement". (Doc. 1-2).

The term "Advertisement" is defined in the following manner:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or similar electronic means of communication; and

    b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement. *Id.*

Coyle maintains that there is a potential advertising injury because Prairie relied on representations Coyle made regarding the Copeland valves that it took from Copeland's representations, testimonials, and website. Specifically, Coyle argues the representations and testimonials on Copeland's website qualify as an advertisement under the policy provision stating that "Notices that are published include material placed on the internet…" (Doc 1-4 p.74). This is a stretch the Court cannot abide. Coyle did not broadcast the representations in question to the general public; thus, there was no "advertisement" and no claimed personal and advertising injury under the Policy.

## Conclusion

For the foregoing reasons, Federated Mutual Insurance Company's Motion for Judgment on the Pleadings is **GRANTED**; Federated does not have a duty to defend or indemnify Coyle in the underlying lawsuit. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED:  January 10, 2020**

_____
**STACI M. YANDLE**
**United States District Judge**