UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERATED MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:17-cv-00991-SMY-GCS ) |
| COYLE MECHANICAL SUPPLY INC., and PRAIRIE STATE GENERATING COMPANY, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Defendant Prairie State Generating Company ("Prairie") filed suit against Defendant Coyle Mechanical Supply, Inc. ("Coyle") in the Circuit Court of the 20th Judicial Circuit for Washington County, Illinois, on May 18, 2017. (Doc. 1, Exh. 1). In its complaint, Prairie alleged that it requested bids from Coyle for valves for the operating units of Prairie's power plant. *Id*. at ¶ 4, ¶ 6. Coyle recommended valves manufactured by Copeland Industries and allegedly represented that those valves were built to last for decades and were the best high-pressure steam valves. *Id*. at ¶ 10, ¶ 11. In reliance on these statements, Defendant Prairie installed thirty-two of the valves. *Id*. at ¶ 15. However, the valves began to leak and failed shortly thereafter. *Id*. at ¶¶ 17-21.

Coyle relied on its insurer, Federated Mutual Insurance Company ("Federated"), to defend the lawsuit filed against it; Federated is the plaintiff in the instant matter. (Doc.

65, p. 3). However, on June 26, 2017, Federated informed Coyle that it would not provide it with a defense or indemnification coverage for Prairie's lawsuit. (Doc. 7, Exh. 3). Federated filed the present lawsuit on September 14, 2017, seeking a declaratory judgment in its favor. (Doc. 1).

On February 12, 2018, Federated filed a motion for judgment on the pleadings. (Doc. 24). Shortly thereafter, Federated also moved for a stay of discovery pending a ruling on that motion. (Doc. 26). The Court granted in part and denied in part Federated's motion for a stay, but permitted discovery related to whether Prairie's damages fall within the purview of an injury or occurrence under Federated's policy. (Doc. 32). Federated submitted answers to Coyle's first set of interrogatories and requests for production on June 4, 2018. It also included a privilege log identifying documents withheld from production. (Doc. 65, Exh. A).

The Court granted Federated's motion for judgment on the pleadings. (Doc. 57). However, the United States Court of Appeals for the Seventh Circuit reversed that ruling, stating that the case should be decided on a "fully developed factual record . . . ." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 317 (7th Cir. 2020).

Now before the Court is Coyle's motion to compel, which seeks the production of documents listed in Federated's privilege log and the provision of additional details with respect to other entries listed in the log. (Doc. 64, 65). Plaintiff filed a response in opposition. (Doc. 70). The instant matter was referred to the Court by United States District Judge Staci M. Yandle. (Doc. 67). A hearing was held regarding the matter on May 25, 2021. (Doc. 71). Afterwards, supplemental responses and authorities and

were filed by both parties. (Doc. 74, 80). For the reasons delineated below, the motion to compel is **GRANTED**.

## ANALYSIS

In its privilege log, Federated asserts that nine documents are privileged; of those nine, Federated claims that six are protected by the work-product privilege, and three are protected by both the attorney-client privilege and the work-product privilege. (Doc. 65, p. 4). Of the six documents allegedly protected by the work-product privilege, four documents are internal coverage evaluations. *Id*. Coyle argues that Federated cannot meet its burden of showing that these four internal coverage evaluations were written exclusively in anticipation of litigation. *Id*. at p. 5. Coyle also asserts that Federated's privilege log does not provide sufficient information for Coyle to address adequately the claims of privilege for the three documents subjected to the attorney-client and work-product privilege. *Id*. at p. 7-8. In response, Federated claims that Coyle cannot show that the requested documents are relevant; it further asserts that the documents are properly protected by the work-doctrine privilege. (Doc. 70, p. 4, 8).

I. **Whether the Requested Documents are Relevant**

Under the Federal Rules of Civil Procedure, parties may obtain discovery into any non-privileged matter relevant to a party's claim or defense so long as that discovery is proportional to the needs of the case. *See Pegues v. Coe*, No. 3:16-CV-239-SMY/RJD, 2017 WL 4922198, at *1 (S.D. Ill. Oct. 31, 2017)(citing FED. R. CIV. PROC. 26(1)). The purpose of discovery is to provide a mechanism for making relevant information available to litigants. *See* FED. R. CIV. PROC. 26 advisory committee note to 1980 amendment.

Accordingly, the relevancy requirement is to be broadly construed to include matters "that bear on, or that could reasonably lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted); *see also* FED. R. CIV. PROC. advisory committee note to 1946 amendment. Nevertheless, the relevancy requirement should be firmly applied, and a district court should not neglect its power to restrict discovery when necessary. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 320 (7th Cir. 2003); *Stephenson v. Florilli Transportation, LLC*, No. 3:18-cv-0103-NJR-DGW, 2018 WL 4699863, at *1 (S.D. Ill. Oct. 1, 2018).

Federated argues that the documents Coyle requested are not relevant to the central issues in this case, *i.e.*, whether a miscommunication led Prairie to purchase the wrong valves, whether Prairie or the valve manufacturer was aware the valves were defective prior to their failure, and whether Prairie seeks damages for physical injury to its own property. (Doc. 70, p. 5). Coyle requests internal documents relating to whether or not there was coverage under Federated's policies. *Id.* at p. 7. However, during a hearing on Federated's motion to stay discovery on March 19, 2018, Magistrate Judge Stephen C. Williams noted that Federated's analysis of whether or not there is coverage under its policies is immaterial to the Court's analysis because the Court must make a *de novo* determination regarding the existence of coverage. *Id.* Accordingly, Federated asserts that its documents reflecting internal coverage evaluations are not relevant to the ultimate issues in the case.

Though the Court must make a *de novo* determination of whether an insurance policy provides coverage for a particular incident, an insurer's internal evaluations may be relevant to determining to what degree the parties anticipated a similar incident and its damages. The policies between Federated and Coyle state that Federated is obligated to pay damages due to "property damage" caused by an "occurrence." *Fed. Mut. Ins. Co.*, 983 F.3d at 311. An "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 316. The policies do not define an "accident," but Illinois courts have defined an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Westfield Nat. Ins. Co. v. Cont'l Cmty. Bank & Tr. Co.*, 804 N.E.2d 601, 605 (Ill. Ct. App. 2003). "What matters is whether the injury was expected or intended." *Fed. Mut. Ins. Co.*, 983 F.3d at 316 (citing *United Nat. Ins. Co. v. Faure Bros. Corp.*, 949 N.E.2d 1185, 1191 (Ill. Ct. App. 2011)). The Seventh Circuit found that there is a material fact question as to whether Prairie seeks damages for physical injury to its property and not just for its own faulty work product; as these damages may extend beyond pure economic loss, they are not necessarily foreseeable "and thus may arise from an 'occurrence." *Id*. at 317 (citing *Lexington Ins. Co. v. Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 981 (7th Cir. 2020)). Review of Federated's internal coverage evaluations may therefore reveal whether Federated believed that the incident was expected, or whether it arose from an 'occurrence,' potentially leading to the discovery of admissible evidence.

The standard under which Coyle must prove relevance in order to obtain the requested documents is necessarily lower than that applied to determine whether the documents are admissible at trial. While Rule 26(b) governs this motion, admissibility is determined under Federal Rule of Evidence 401. Under Rule 26(b)(1), "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." The subtle difference between "information" and "evidence" indicates that discovery permits a greater breadth of relevance than would be admitted at trial. *See Coleman v. Illinois*, Case No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sep. 25, 2020). Because the purpose of discovery is to help "define and clarify the issues," relevance must be broadly construed. *Oppenheimer Fund, Inc.*, 437 U.S. at 351. "If relevance is in doubt, courts should err on the side of permissive discovery." *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004).

A review of Federated's internal coverage evaluations at the discovery stage may help to define and clarify the issues related to coverage and expected damages at trial, even if that evidence is not itself admissible. For example, Federated's internal coverage evaluations may reveal its own investigation of the factual circumstances underlying the installation of the allegedly defective valves. To the extent that this information led Federated to conclude that an "occurrence" was not present which would justify its coverage denial, such information would most certainly be relevant. This is because such information would bear directly on the issue of an "occurrence" that the Seventh Circuit concluded needed more factual development.

If, on the other hand, no such factual investigation took place that would justify Federated's coverage denial, that too would be of consequence to the instant litigation. At the hearing, counsel for Coyle indicated that it currently did not have facts available to justify the filing of a bad faith counterclaim. But, if Federated refused to defend under the policy without conducting any type of investigation, such a fact would clearly give Coyle legitimate grounds to file a bad faith refusal counterclaim. This is especially true in the instant case where the duty to defend is much broader than the duty to indemnify. The relevancy requirement does not simply include matters that "bear on" issues in the case, but also "other matters that *could bear on*, any issue that is *or may be in the case*." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 351 (emphasis added). Given that the instant matter is a coverage dispute, the issue of bad faith could very well be an issue that may be in the case, and this issue could reveal itself through Federated's internal coverage documents. In light of the above, the Court finds that the documents requested by Coyle are indeed relevant and should be produced.

**II.    Whether Federated's Internal Coverage Evaluations are Protected by the Work-Product Privilege**

Courts sitting in diversity consider the work-product privilege on the basis of federal law, rather than on the basis of the law in which they sit. *See Slaven v. Great Am. Ins. Co.*, 83 F. Supp.3d 789, 795 (N.D. Ill. 2015). This Court will therefore apply federal law to this question. *See* (Doc. 1, ¶ 4). Under federal law, the work-product privilege is narrowly construed because it makes the search for truth more difficult by preventing disclosure of relevant and probative information. *See Slaven*, 83 F. Supp.3d at 796. A party

asserting the work-product privilege must therefore demonstrate through competent evidence and with particularity that the privilege applies to each document for which it is claimed. *Id*.

The work-product privilege applies to documents an attorney or representative of a party creates in anticipation of litigation in order to prepare or analyze the case. *See* FED. R. CIV. PROC. 26(b)(3). Federal circuit courts are split as to the definition of "in anticipation of litigation." *See Alton & Southern Railway Company v. CSX Transportation, Inc.*, Case No. 3:17-CV-01249-NJR, 2020 WL 4933652, at *2 (S.D. Ill. Aug. 24, 2020). The majority rule dictates that documents are fairly protected when they are "prepared or obtained *because of* the prospect of litigation." *Id*. (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir. 1998)). The minority view states that documents are only protected if the "primary motivating purpose" of their production is litigation. *Id*. (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)). The First Circuit also applies a strict standard, requiring that the documents be produced for use in litigation. *Id.* (quoting *United States v. Textron Inc.*, 577 F.3d 21, 29 (1st Cir. 2009)). The latter two standards are more stringent than the "because of" standard. *Id*. (internal citations omitted).

There appears to be an internal split among district courts in the Seventh Circuit as to whether the "primary motivating purpose test" or the "because of" standard is appropriate.[1] The Seventh Circuit Court of Appeals has held that a party asserting the

---

[1] This split appears to derive from many district courts in this Circuit applying the "primary motivating purpose" standard based on a single quotation in *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109 (7th Cir. 1983). *See Alton*, 2020 WL 4933652, at *3. However, the Seventh Circuit in *Binks* ultimately denied work product protection on the grounds that the appellant failed to prove that the documents sought were prepared *because* of the possibility of litigation. *Id.* at *2.

work-product privilege must show that the documents were prepared "because of" litigation. *See Alton*, 2020 WL 4933652, at *2 (citing *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2009); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-977 (7th Cir. 1996) (parentheticals omitted). When a document would have been needed to be prepared regardless of any prospect of litigation, they are not protected by the work-product privilege. *See United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999). Equally, documents compiled for "routine corporate" practices are not protected by the privilege. *See Alton*, 2020 WL 4933652, at *4.

Insurance practices carry a high likelihood of potential litigation; an insurer will inevitably deny some claims for coverage in its normal course of business, and many of those denied claims will result in litigation. *See Slaven*, 83 F.Supp.3d at 795. However, this inevitability does not mean that all internal coverage evaluations are prepared because of litigation. *Cf. id.* (applying the "primary motivating purpose test"). Insurance companies are in the business of evaluating and granting or denying claims for coverage after alleged accidents or occurrences. Documents created to assist an insurer in that process, prior to the denial of a claim at issue in a lawsuit, reflect that business and are more appropriately categorized as routine corporate practices than as legal work-product. *Id.* at 796.

Federated takes issue with Coyle's reliance on *Slaven*. (Doc. 70, p. 8-9). *Slaven* cites to *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.* for the proposition that pre-denial insurance activities are not work-product. No. 09 C 7793, 2010 WL 4781461, at *2 (N.D. Ill. Nov. 17, 2010). In turn, *Lagstee-Mulder* relies on *Country Life Ins. Co. v. St. Paul Surplus Lines Ins.*

*Co.*, No. 03-1224, 2005 WL 3690565, at *7 (C.D. Ill. Jan. 31, 2005). *Country Life Ins. Co.* finally cites to *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996). *Logan* did not hold that the work-product privilege is inapplicable to all pre-denial claims, but instead held that post-denial documents are work-product. *Id.* However, while Federated is accurate in its reading of *Logan*, this history does not undermine the analysis in *Slaven*. Pre-denial documents are often not work-product because insurance companies regularly create these documents in the ordinary course of their business, rather than because of any potential litigation. This analysis is equally applicable here. Accordingly, the work-product privilege does not apply to Federated's internal coverage evaluations.

### III. Whether Federated's Privilege Log is Sufficiently Descriptive

Coyle claims that the remaining three documents Federated alleges are protected by privilege are not sufficiently described in Federated's privilege log for Coyle to prepare an adequate response to the claim of privilege. (Doc. 65, p. 8). When asserting privilege, the asserting party must state the date, author, recipients of the document, subject matter, purpose, and an explanation as to why the document is privileged. *See Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000). The purpose of this description is to provide an opposing party or a court the ability to determine whether the reason for claiming privilege withstands scrutiny. *Id.* (noting that labeling a document as work-product does not establish that the document is, in fact, privileged).

A sparse description does nothing to distinguish the document at issue from "perhaps thousands of others" which are not privileged. *Id*.

Federated describes two documents dated June 20, 2017 authored by Beth Ann Berger Zerman, Esq. and received by A. Steinbauer as "Letter" in the description section of the privilege log. (Doc. 1, Exh. A). It also describes a document dated July 5, 2017, authored by Beth Ann Berger Zerman, Esq. and received by A. Steinbauer as "Email." *Id*. These descriptions do not properly indicate why Federated claims the documents are protected by the attorney-client privilege and work-product privilege. In order for Coyle and the Court to assess Federated's claims properly, Federated must provide some description of the documents sufficient to justify its assertions. The Court therefore finds that Federated must re-submit its privilege log for the "Letters" and "Email" with a valid description justifying its assertion of privilege.

## Conclusion

For the above stated reasons, Defendant Coyle Mechanical Supply Inc.'s motion to compel (Doc. 64) is **GRANTED.** Plaintiff Federated Mutual Insurance Company is **ORDERED** to turn over its internal coverage evaluations to Defendant Coyle within fourteen days, on or before **AUGUST 11, 2021.** Moreover, Plaintiff is **ORDERED** to resubmit its privilege log as described above within fourteen days, on or before **AUGUST 11, 2021.**

**IT IS SO ORDERED.**

**DATED:  July 28, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.07.28 09:18:53 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**